NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JOHN OVIEDO, *Appellant*.

No. 1 CA-CR 18-0236
FILED 4-30-2019

Appeal from the Superior Court in Maricopa County
No.  CR2015-002092-002
The Honorable Susanna C. Pineda, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Cynthia D. Beck
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge James B. Morse Jr. delivered the decision of the Court, in which Judge Jon W. Thompson and Vice Chief Judge Peter B. Swann joined.

---

**M O R S E**, Judge:

¶1         John Oviedo appeals his convictions and sentences for three counts of aggravated assault and one count of misdemeanor assault.  He argues the superior court erred by allowing the State to use a peremptory challenge to strike a juror for discriminatory purposes.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2         In June 2015, Oviedo was charged with six counts of aggravated assault, including five charged as dangerous felonies.

¶3         Trial commenced on January 30, 2018.[1]  At trial, the State dismissed two of the charged counts and proceeded on the remaining four counts.  After jury selection was conducted, Oviedo raised a *Batson*[2] challenge to one of the State's peremptory strikes against a juror ("Juror 1").  Oviedo argued that Juror 1 was "the only African American male on the panel" and "[t]here [was] no information . . . about him that would cause him to be seen as unfair to either party."  After the State provided a reason for the peremptory strike, the court found the reason to be race-neutral and allowed the strike to stand.

¶4         The jury found Oviedo guilty of three counts of aggravated assault, class 3 dangerous felonies, and guilty of the lesser-included offense of misdemeanor assault for the remaining count.  The jury also found several aggravating factors.  The superior court sentenced Oviedo to aggravated, concurrent sentences of 12 years' imprisonment on two counts; a consecutive term of 7.5 years' imprisonment on the third felony count;

---

[1]     A previous trial ended in a mistrial on October 3, 2017, after the jury could not reach a unanimous verdict.

[2]     *Batson v. Kentucky*, 476 U.S. 79 (1986).

and a concurrent term of 6 months' in jail on the misdemeanor, with credit for 6 months' time served.

**¶5**       Oviedo timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

**¶6**       Oviedo's sole argument on appeal is that the superior court's finding that the State's peremptory strike of Juror 1 was race-neutral, is "clearly erroneous, requiring reversal" of Oviedo's convictions and sentences. When reviewing a trial court's ruling on a *Batson* challenge, we defer to its factual findings unless clearly erroneous, but review its legal determinations de novo. *State v. Lucas*, 199 Ariz. 366, 368, ¶ 6 (App. 2001).

**¶7**       The Equal Protection Clause of the Fourteenth Amendment prohibits a party from using a peremptory strike to remove a prospective juror from the jury panel based solely upon race. *Batson v. Kentucky*, 476 U.S. 79, 89 (1986). A *Batson* challenge involves three steps. First, the party challenging the strike must make a prima facie showing that the strike was based on race. *Lucas*, 199 Ariz. at 368, ¶ 7. Second, the party making the strike may then offer a race-neutral explanation. *Id.* That explanation "must be more than a mere denial of improper motive, but it need not be 'persuasive, or even plausible.'" *Id.* (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)). Third, if the striking party provides a race-neutral explanation, the trial court must decide whether the party challenging the strike has sustained their burden of proving purposeful racial discrimination. *Purkett*, 514 U.S. at 767-68. That is, the party challenging the strike must persuade the trial court that the proffered race-neutral explanation is pretextual. *State v. Gay*, 214 Ariz. 214, 220, ¶ 17 (App. 2007). During this step, the superior court assesses the credibility of the State's proffered explanation, considering factors such as the State's "demeanor; . . . how reasonable, or how improbable, the explanations are; and . . . whether the proffered rationale has some basis in accepted trial strategy." *Id.* (alterations in original) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003)).

**¶8**       During jury selection, Oviedo challenged the State's peremptory strike of Juror 1. Asserting the objection, Oviedo pointed out that Juror 1 was

> the only African American male on the panel. He's by far the darkest person on this panel. There is no information we learned about him that would cause him to be seen as unfair

3

to either party. He raised his hands to almost no questions other than having a sister who studied law . . . that's the only information he gave us other than basic demographic information. He's never served on a jury, and that he has a fairly routine job.

Oviedo further stated that because of this, the State could not provide a "race neutral explanation here."

**¶9**     The superior court asked the State—out of "an abundance of caution"—to provide an explanation for striking Juror 1, presumably concluding that Oviedo had established a prima facie case of discrimination and satisfied the first step of the *Batson* procedure. *See State v. Newell*, 212 Ariz. 389, 401, ¶ 54 (2006) ("The first step of the Batson analysis is complete when the trial court requests an explanation for the peremptory strike."). The court also noted that Juror 44—a second African American juror, however female—was picked to be on the panel. The State offered the following reasons for striking Juror 1: (1) he is "single" while the "victims in this case are married"; (2) he does not have any children whereas the victims do have children; and (3) he is "around 22 years old" and "lacks [life] experience."

**¶10**     In response, Oviedo conceded that the State's reasons were "race neutral," but argued the following:

> The problem is there are many, many other young people on this panel that were not struck, and I did not write down how many kids everyone had. That wasn't a concern of mine.
>
> I can't tell you who they were. I believe there were other individuals with no children that were not struck as well.

Oviedo further stated that although Juror 1 is one of only two African Americans on the panel, he is the only "African American male" and is "by far the darkest person on th[e] panel."

**¶11**     Denying Oviedo's *Batson* challenge, the court stated that "most of the jurors . . . appeared older" than Juror 1 and that only "one individual" did not have children and another lived with "four roommates, single, with no kids." The court also stated that "by the same token," the State proffered a race-neutral explanation and "allow[ed] the strike to stand." After the State had proffered a race-neutral reason for the strike, Oviedo bore the burden of demonstrating that the strike resulted from purposeful racial discrimination. *Purkett*, 514 U.S. at 768. Oviedo's

response to the superior court "offered no evidence, other than inference," of purposeful racial discrimination. *See Newell*, 212 Ariz. at 402, ¶ 58. Because Oviedo did not direct the trial judge to specific jurors alleged to be similarly situated, provide the prosecutor the opportunity to explain any differences or clarify which factors may have predominated, nor give the superior court the opportunity to conduct an in-depth comparison, his claim must fail. *See State v. Medina*, 232 Ariz. 391, 405, ¶ 49 (2013) ("We decline to examine more detailed comparisons than were alleged at trial.").

¶12         On appeal, Oviedo attempts to correct this deficiency and argues that the State's explanation was "neither plausible nor credible" because the State struck "the only male African American juror but did not use [] strikes on *four* other jurors who had the same characteristics of being either single, or childless, or both." He asserts that the reasons given by the State were "pretextual" considering "similarly situated jurors who were not African American" were selected. He states that Jurors 1, 14, 36, and 37 "did not have children," Jurors 1, 2, 36, and 37 "indicated they were single," and Jurors 2, 14, 36, and 37 were all impaneled and sworn in.

¶13         Even if we overlook the failure to provide this comparison at the superior court, the record does not support Oviedo's assertions about the other jurors. During jury selection, only Jurors 1 and 37 stated that they were, in fact, childless. Juror 2 stated that he had two adult children. Juror 14 stated that he was married but did not state whether he had children. Juror 36 said that she was single, but also stated that she had a live-in boyfriend and did not indicate whether she had children. Thus, the only juror to which Oviedo can point to show a similarly-situated impaneled juror is Juror 37. That juror, however, stated that he or she had four roommates and "currently identified as single"—potentially indicating a prior marriage.

¶14         In light of this record, the superior court did not err by finding that Oviedo failed to meet his burden. The court explicitly stated that Juror 1 appeared to be younger than the other jurors and correctly identified Juror 37 as the only other potential juror who had expressly disclaimed any children. Courts have repeatedly affirmed youth or immaturity of a prospective juror as a rational non-pretextual explanation for the use of a strike. *See State v. Sanderson*, 182 Ariz. 534, 540 (App. 1995) ("Prospective jurors' age, marital status and lack of employment have been identified as non-discriminatory reasons supporting the exercise of peremptory strikes.") (citing *United States v. McCoy*, 848 F.2d 743, 745 (6th Cir. 1988)); *see also Rice v. Collins*, 546 U.S. 333, 341 (2006) ("It is not unreasonable to believe the prosecutor remained worried that a young person with few ties to the

community might be less willing than an older, more permanent resident to impose a lengthy sentence for possessing a small amount of a controlled substance."); *United States v. Vega*, 450 F. App'x 844, 848 (11th Cir. 2012) (unpublished) (affirming where the prosecution "believed that younger jurors would be influenced by 'popular media and television' shows in expecting evidence to be clear cut"); *United States v. Jackson*, 914 F.2d 1050, 1052 (8th Cir. 1990) (finding decision to strike juror for being "young, single, [and] unemployed" and thus not having "a better understanding of life" was "neutral and not pretextual"); *Cobb v. State*, 825 So.2d 1080, 1082, 1085 (Fla. Dist. Ct. App. 2002) (affirming use of strike where prosecutor "explained that, based on her experience as a juvenile prosecutor, she believed younger people were more tolerant of drugs"); *Harley v. State*, 671 A.2d 15, 19 (Md. 1996) (affirming where the prosecutor "explained that, as a general rule, she preferred to seat jurors who are over thirty years old and married" because they are "generally more 'stable' and therefore more 'state-oriented'"). Thus, striking younger jurors has at least some basis in "accepted trial strategy." *Gay*, 214 Ariz. at 220, ¶ 17. In this light, the superior court was in the best position to evaluate the sincerity of the race-neutral reasons proffered by the State, *see Newell*, 212 Ariz. at 401, ¶ 54, and determine whether Oviedo had met his burden of proving purposeful racial discrimination, *see Purkett*, 514 U.S. at 767-68. Because the "[superior] court's finding is entitled to great deference," *State v. Butler*, 230 Ariz. 465, 475, ¶ 40 (App. 2012), we must defer to those determinations here.

## CONCLUSION

¶15     For the foregoing reasons, we affirm Oviedo's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA